UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**VIRGIN ISLANDS HOUSING AND FINANCE AUTHORITY**,

        Petitioner,

        v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY**,

        Respondent.

Case No. 1:23-cv-02845 (TNM)

## MEMORANDUM OPINION

Petitioner Virgin Islands Housing and Finance Authority (VIHFA) seeks to vacate an arbitration award on technical grounds.  But VIHFA gets caught in its own snare, as its Petition suffers from technical deficiencies that ultimately foreclose relief.

In December 2022, VIHFA and Respondent Federal Emergency Management Agency submitted to arbitration before the Civilian Board of Contract Appeals.  The arbitration was supposed to settle reimbursements FEMA owed VIHFA for hurricane disaster aid expenditures.  The Board assembled a three-member arbitration panel.  Sadly, one of the arbitrators died while the arbitration was pending.  The remaining two arbitrators ultimately awarded some funds to VIHFA, though less than it had requested.  VIHFA now seeks to vacate the arbitration award.  It argues the Board's decision was unlawful because it was not issued by the full three-member panel.  FEMA insists the decision was lawful.  It also claims VIHFA missed the deadline for serving the Petition, providing an independent ground for dismissal.  Because the Court finds that VIHFA failed to timely serve its Petition, the Court will dismiss it.

## I.

In September 2017, Hurricanes Irma and Maria slammed the U.S. Virgin Islands. *See In the Matter of Virgin Islands Hous. Fin. Auth.*, CBCA 7610 (June 28, 2023), ECF No. 1-2 [hereinafter "Decision"]. The damage was catastrophic. But FEMA lent a helping hand, authorizing a funding grant under the Stafford Act, 42 U.S.C. §§ 5121–5207. Decision at 2. The Virgin Islands appointed VIHFA to execute this grant. *Id*. at 3.

VIHFA contracted for thousands of construction projects throughout the islands. Pet. and Mot. to Vacate Arb. Award (Pet.) at 2, ECF No. 1. And it incurred several hundred million dollars in expenses. Decision at 3. It ultimately submitted a total project cost of roughly $594 million. *Id*. at 4. Though FEMA reimbursed VIHFA for most of these expenses, it found about $85 million in costs "ineligible" for reimbursement. Pet. at 2. VIHFA filed an administrative appeal. And FEMA approved an additional $8.5 million in costs. Decision at 4. But it denied reimbursement for the remaining $76 million. *Id*. In December 2022, VIHFA filed a request for arbitration seeking nearly $80 million. *Id*.

Under the Stafford Act, cost eligibility disputes between FEMA and grantees are subject to arbitration by the Civilian Board of Contract Appeals. 42 U.S.C. § 5189a(d)(1); 48 C.F.R. § 6106.603. The Board consists of arbitrators appointed by the General Services Administrator. 41 U.S.C. § 7105(b)(2); 48 C.F.R. § 6101.1(b). Arbitration before the Board, like arbitration generally, is meant to be a "speedy and flexible method of impartial dispute resolution." 48 C.F.R. § 6106.603.

The Board conducts arbitration proceedings under the Rules of Procedure for Arbitration of Public Assistance Eligibility or Repayment, codified at 48 C.F.R. Part 6106. For each arbitration request, the Board assigns a panel of three arbitrators. *Id*. § 6106.606. A single

arbitrator can conduct certain scheduling conferences and hearings on behalf of the panel. *Id.* §§ 6106.606, 6106.607, 6106.611. But "[a] full panel" must issue any final decision. *Id.* §§ 6106.606, 6106.613.

The Board assigned this matter to an arbitration panel consisting of three Board members—Erica S. Beardsley, Jerome M. Drummond, and Patricia J. Sheridan. Notice of Docketing, ECF No. 1-3. The full panel held hearings in late February 2023. Decision at 4. At some point after that, Arbitrator Drummond took sick leave and passed away.

On June 28, 2023, the remaining panel members issued a final award. In a footnote, they explained,

> After the arbitration hearing in this matter concluded and the record closed, Judge Drummond, unexpectedly, had to take extended leave and was, therefore, unable to participate in the arbitration decision. Nonetheless, the two remaining panel members, Judge Beardsley and Judge Sheridan, form a panel majority and may render the arbitration decision without Judge Drummond's participation. This decision is the final administrative action on the arbitration dispute. Rule 613 (48 CFR 6106.613 (2021)).

Decision at 1 n.1.

On July 28, 2023—one month after the panel issued the award—VIHFA filed a motion to vacate the award to the Board because the award had been issued without a full panel. VIHFA's Mot. to Vacate, ECF No. 1-5. On August 16, the Board informed VIHFA that it lacked authority to reconsider its decision. Denial of Mot. to Vacate, ECF No. 1-6. VIHFA then filed its Petition to Vacate in this Court on September 26. Pet. at 2.

## II.

A party seeking to vacate an arbitration decision faces a "high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Under the Federal Arbitration Act (FAA), "[j]udicial review of arbitral awards is extremely limited." *Kurke v. Oscar Gruss & Son, Inc.*,

454 F.3d 350, 354 (D.C. Cir. 2006) (cleaned up).  And in general, courts will enforce an arbitration award "unless given a compelling reason to suspect that the award resulted from an unfair process." *Rep. of Argentina v. AWG Grp. LTD.*, 894 F.3d 327, 332 (D.C. Cir. 2018).  The FAA requires enforcement even when an arbitration proceeding failed to "provide the full process protections."  *Id*.  This is because the FAA's "primary purpose . . . is not to turn arbitration panels into private federal courts but to ensure that private agreements to arbitrate are enforced according to their terms."  *Id*. (cleaned up).

In sum, the Court will only interfere with an arbitration decision if "the proceeding deviated significantly from the [FAA's] standards of fair adjudication."  *Id*.  Section 10 of the FAA sets forth the kinds of "egregious departures" from the arbitration agreement that warrant intervention: "corruption," "fraud," "evident partiality," "misconduct," "misbehavior," "exceed[ing] . . . powers," "evident material miscalculation," "evident material mistake," and "award[s] upon a matter not submitted."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) (quoting 9 U.S.C. § 10).  "The burden to prove that there was unfair process falls on the challenger's shoulders, and it is onerous."  *Rep. of Argentina*, 894 F.3d at 333 (cleaned up).

The Board's arbitration decisions are "final" and are "judicially reviewable only to the limited extent provided by the Federal Arbitration Act."  48 C.F.R. § 6106.613.  Section 10 of the FAA provides that judicial review is available in "the district wherein the award was made."  9 U.S.C. § 10.  Since the Board made its award in Washington, jurisdiction is proper here.

**III.**

VIHFA challenges the Board's decision under both the FAA and § 706 of the Administrative Procedure Act.  It fails on both grounds.  Relief under the FAA is unavailable because VIHFA failed to timely serve FEMA.  And the APA does not provide a cause of action

4

because the FAA provides an adequate remedy that precludes APA review. In short, VIHFA's technical challenge suffers considerable technical deficiencies of its own.

### A.

Recall that the FAA presents a "high hurdle" for petitioners seeking to vacate an arbitration award. But before reaching this high hurdle, VIHFA had to clear a lower one—timely service of notice. And here, it stumbled.

Section 12 of the FAA states that "[n]otice of a motion to vacate . . . must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12; *Ballantine v. Dominican Rep.*, No. 20-cv-7086, 2021 WL 5262555, at *2 (D.C. Cir. Oct. 22, 2021) (per curiam). For adverse parties who are residents of the district where the award was issued, "service shall be made . . . as prescribed by law for service of notice of motion in an action in the same court." 9 U.S.C. § 12; *see also id.* § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions . . . ."). Section 12's three-month deadline is "strict," and provides no statutory exceptions. *Argentine Rep. v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011).

Rule 5 of the Federal Rules of Civil Procedure governs the service of motions in federal district court. And Rule 5(b) says that service can be achieved through several means. These include "mailing [the papers] to the person's last known address—in which event service is complete upon mailing" and "sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing." Fed. R. Civ. P. 5(e)(C), (E). Rule 4(i) of the Federal Rules of Civil Procedure provides additional requirements for serving the United States and its agencies. But the parties do not argue these requirements apply to service of a motion to vacate under § 12 of the FAA.

5

For starters, VIHFA argues that § 12's three-month service deadline does not apply because the panel's award was invalid under Board rules and therefore not "final." *See* Pet.'s Reply to Mot. to Vacate at 13 (Reply), ECF No. 10. This argument crumples against the plain text of the FAA. Section 10 states that a district court may review an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that *a mutual, final, and definite award upon the subject matter submitted was not made*." 9 U.S.C. § 10(a)(4) (emphasis added). Section 12 then provides that any motion for review of an award in district court "must be served upon the adverse party or his attorney within three months after the award is *filed or delivered*." *Id*. § 12 (emphasis added).

Read together, §§ 10 and 12 contemplate that awards so defective that they are effectively not "final" still trigger the three-month service deadline when those awards are "filed or delivered." To conclude otherwise would nullify the limitations period for any petition to review an award where the arbitrators allegedly "exceeded their powers" such that no "final" award was made. The text of the statute does not support such a gaping exception. So the Board's June 28 award began the service clock. This means VIHFA was required to serve FEMA by September 28, 2023. 9 U.S.C. § 12.

Accepting September 28 as the proper deadline, VIHFA next contends that it timely served FEMA by email on September 26. And in the alternative, it argues it served FEMA by mail on September 29—though it admits that its attempt at service by mail was one day late. Still, it insists that the Court should equitably toll the deadline. Neither argument is persuasive.

1.

Begin with VIHFA's attempt at electronic service. Rule 5(b)(2)(E) permits electronic service of motions, but it requires "written consent" from the party being served. *Judd v. FCC*,

6

276 F.R.D. 1, 7 n.9 (D.D.C. 2011).  Courts strictly construe this requirement.  "The consent must be express, and cannot be implied from conduct."  *Ortiz-Moss v. N.Y.C. Dep't of Transp.*, 623 F. Supp. 2d 404, 407 (S.D.N.Y. 2008) (citing Advisory Committee Notes to Fed. R. Civ. P. 5, 2001 Amendments); *see also* 4 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1147 (4th ed. 2015) ("[C]onsent cannot be inferred from the conduct of the intended recipient, such as by having an e-mail address on a letterhead.").  Even a party's failure to object to email service earlier in the litigation does not obviate the need for written consent.  *Ortiz-Moss*, 623 F. Supp. 2d at 407.

FEMA never expressly consented to electronic service—not in the arbitration, not in federal court.  In fact, FEMA expressly rejected VIHFA's attempt at electronic service.  Around midday on September 26, VIHFA emailed FEMA a copy of its Petition to Vacate.  Ex. 3 at 3, ECF No. 10-3.  FEMA did not immediately respond.  *Id*. at 2–3.  Later that evening, VIHFA asked whether FEMA would be "willing to accept service, or would [it] prefer that we file a summons with the DC District Court?"  *Id*. at 2.  FEMA responded the following morning that it "cannot accept service by email" and that VIHFA "should comply with the requirements of Federal Rule of Civil Procedure [sic] for serving the United States and its agencies."  *Id*. at 1.

FEMA thus refused VIHFA's attempted electronic service.  Still, VIHFA argues that this attempt was effective because FEMA had previously "consented to receive filings relating to this arbitration via email" and that the emailed Petition was "part of that ongoing practice."  Reply at 21.  As evidence of this consent, VIHFA relies on the rules for FEMA arbitrations, 48 C.F.R. §§ 6106.601 *et seq*.  VIHFA points to Rule 605, which provides that "a party shall email its efilings to every other party's primary representative at the time of filing."  48 C.F.R. § 6106.605.  It

7

argues that, by following this rule, FEMA consented to receive filings related to this arbitration via email.

But this alleged consent is defective in two ways. First, nothing in the plain text of Rule 605 suggests that it applies to Petitions to Vacate, which are filed before a different tribunal after a final arbitration award has been issued. And second, even assuming consent to Rule 605 could carry over to service in federal court, VIHFA provides no proof that FEMA consented to any rule for email service *in writing* as Rule 5(b) requires.

VIHFA contends that FEMA's compliance Rule 605 during the arbitration means that it broadly consented to electronic service for a motion to vacate in federal court. *See* Reply at 15. Rule 605 is one of several rules in the Rules of Procedure for Arbitration of Public Assistance Eligibility or Repayment that directs parties to "efile" and email documents during the arbitration. *See* 48 C.F.R. § 6106.604 (requiring arbitration applicants to "efile arbitration requests with the Board"); *id*. § 6106.605 (establishing that "a party shall email its efilings to every other party's primary representative"); *id*. § 6106.607 (parties may "efile" objections to arbitration panel's conference summary); *id*. § 6106.608 (requiring FEMA to "email its response to an arbitration request"); *id*. § 6106.608 (noting that post-conference motions "may be efiled"). These e-filing requirements are integral to the "streamlined procedures" that make arbitration an efficient alternative to litigation. *See id*. § 6106.612 (encouraging parties in arbitration to "[s]implify[] live hearings by efiling in advance written testimony, reports, or opening statements by some witnesses or party representatives"). Consistent with this purpose, these rules are limited in scope. The e-filing requirements are tied to specific Board procedures. *See id*. § 6106.609 (e-filings must comply with "Board Rules 1(b)"). And each e-filing requirement

8

relates to a discrete element within the arbitration, such as filing objections to the Board's conference summary, *id*. § 6106.607, or entering a notice of appearance, *id*. § 6106.605.

The Court assumes that both parties complied with these requirements. But because these requirements apply only to arbitration before the Board, compliance cannot be construed as consent to electronic service for proceedings in an entirely different forum. Arbitration before the Board is governed by one set of rules, proceedings in federal court another. *Accord* 9 U.S.C. § 12 (establishing that service of a motion to vacate "*shall be made* . . . as prescribed by law for service of notice of motion in an action in the same court" (emphasis added)). And though the Court in adjudicating a motion to vacate will enforce the substance of the arbitration agreement, this does not mean that the parties can contract to override the Federal Rules of Civil Procedure. *Cf. Hanna v. Plumer*, 380 U.S. 460, 473 (1965) (describing federal courts' "strong inherent power" in "matters which relate to the administration of legal proceedings" including the application of the Federal Rules). When in federal court, parties must follow federal court rules. GSA Rule 605 does not trump Federal Rule of Civil Procedure 5(b). VIHFA does not contend otherwise.

Even assuming consent to e-filing in an arbitration proceeding could carry over to federal court, VIHFA provides no evidence that FEMA expressly consented to electronic service *in writing*. The Court infers that FEMA followed Rule 605. But Rule 605, which requires electronic service, unsurprisingly requires no written consent to it. And consent to electronic service under Rule 5 "cannot be implied from conduct." *Ortiz-Moss*, 623 F. Supp. 2d at 407. So even a broad reading of Rule 605's instruction that each party "shall email its efilings to every other party's primary representative" would not satisfy Rule 5(b)'s clear requirement, absent express written assent.

VIHFA cites a handful of cases from other districts suggesting that consent to email service during the arbitration carries over to a petition to vacate. These cases are unpersuasive. Take *Corinthian Colleges, Inc. v. McCague*, 2010 WL 918074, at *2 (N.D. Ill. Mar. 4, 2010). There, the court held that the petitioner's notice was timely because the respondent "had consented to electronic service" in the arbitration proceeding. *Id*. But *Corinthian* contains no details about the parties' consent—whether it was express or implied, limited or broad. The case thus carries little weight in the face of Rule 5(b)'s requirement that consent be express and "in writing." Fed. R. Civ. P. 5(b)(2)(E). So too with VIHFA's other citations. *See Aperion Care, Inc. v. Senwell Senior Inv. Advisors*, 2022 WL 10505696, at *2 (N.D. Ill. Oct. 17, 2022) (holding that consent to email service in arbitration applied to petition to vacate); *Day & Zimmerman, Inc. v. SOC-SMG, Inc.*, 2012 WL 5232180, at *4 (E.D. Pa. Oct. 22, 2012) (same). As with *Corinthian*, these cases provide no reason to sidestep the strictures of Rule 5(b). At bottom, there is no evidence FEMA consented to electronic service in federal court and certainly no evidence of written consent to such service.

For a more instructive decision, look to *Dalla-Longa v. Magnetar Capital, LLC*, 33 F.4th 693 (2d Cir. 2022). There, the Second Circuit rejected the very argument VIHFA advances here: that an "agreement to accept papers by email in the arbitration proceedings extends to service of motion papers in the district court to vacate the arbitration award." *Id*. at 696. The alleged consent in *Dalla-Longa* was based on a letter from the arbitration association stating that "correspondence, including briefs and motions, 'should be sent via e-mail.'" *Id*. But "even assuming" the parties "agree[d] to email service in the arbitration," the court held "that agreement did not constitute [the respondent's] written consent to service of papers by email in a subsequent lawsuit brought in federal court to vacate the arbitration award." *Id*. This reasoning

10

dooms VIHFA's service-by-email argument.  Consent in an arbitration does not automatically transfer to federal court—especially when that consent was not express or in writing.

**2.**

Now consider VIHFA's service-by-mail argument.  Rule 5(b)(2)(C) provides that a paper may be served by "mailing it to the person's last known address—in which event service is complete upon mailing."  Fed. R. Civ. P. 5(b)(2)(C); *see also Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 72 (D.D.C. 2002) ("Service is deemed complete at the moment the document is properly posted and deposited for mailing.").  VIHFA mailed a copy of the Petition to the Attorney General and FEMA Chief Counsel on September 29, 2023.  Ex. 7, ECF No. 10-7.  But as VIHFA itself acknowledges, this was one day late.  Reply at 21.  So this attempt at service was untimely.

VIHFA hopes to salvage its claim through equitable tolling.  To merit equitable tolling, a litigant must show both "(1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up).  To count as "extraordinary," the circumstances that caused a litigant's delay must have been "beyond its control."  *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 256 (2016).  Equitable tolling "is not available to a litigant who misses a deadline because of a 'garden variety claim of excusable neglect' or a 'simple miscalculation.'"  *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 58 (D.C. Cir. 2023) (quoting *Holland*, 560 U.S. at 651–52).  Nor can "the circumstances that caused a litigant's delay . . . be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation."  *Menominee Indian Tribe*, 577 U.S. at 255.  Because VIHFA

11

cannot show that its delay was caused by "extraordinary circumstances" and that it was diligent in pursuing its rights, equitable tolling does not apply.[1]

VIHFA argues that equitable tolling is warranted here because its single-day delay in service was caused by "ambiguity" and "confusion" regarding its obligations under the Federal Rules of Civil Procedure. Reply at 16, 18. But pleas of ambiguity and confusion merit no consideration when made by experienced attorneys who waited until the last minute to attempt service.

Consider the supposed "ambiguity." Rule 5 governs service of process for petitions to vacate an arbitration award because it is the method "prescribed by law for service of notice of motion in an action" in this Court. 9 U.S.C. § 12; *Martin v. Deutsche Bank Sec. Inc.*, 676 F. App'x 27, 28–29 (2d Cir. 2017) (explaining that Rule 5 applies to service of a petition to vacate arbitration award). Neither party disputes that Rule 5 governs here. *See* Resp.'s Opp'n to Mot. to Vacate (Opp'n) at 8, ECF No. 8; Reply at 17. So as it stands, the rule governing service here is not ambiguous.

Even so, VIHFA claims that the Court's Standing Order led it to believe that it needed to comply with Rule 4 instead of Rule 5. *See* Reply at 21. This is because the Standing Order, among other things, instructs Plaintiffs that they "must promptly serve the complaint on the Defendant(s) in accordance with Federal Rule of Civil Procedure 4 and file proof of service." Standing Order, ECF No. 4. Taking this generic instruction to apply to service of a petition to

---

[1] There is a circuit split on whether courts can equitably toll 9 U.S.C. § 12's statutory deadline. *Compare Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1156–58 (9th Cir. 2016), *with Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). The D.C. Circuit has not weighed in. *See Ballantine*, 2021 WL 5262555, at *2. Because VIHFA does not qualify for equitable tolling, the Court need not resolve whether equitable tolling is available under the statute. *See id*.

vacate, and not just "complaint[s]," VIHFA requested the Clerk of Court to issue a summons, as required by Rule 4.  Though VIHFA filed the summons request on the morning of September 27—one day before the service deadline—the Clerk did not issue the summons until after business hours the next day.  Ex. 5, ECF No. 10-5; Ex. 6, ECF No. 10-6.  This made it impossible for VIHFA to serve FEMA until September 29.  VIHFA claims that this delay, coupled with its mistaken belief that Rule 4 controlled, caused it to miss the service deadline.

As more evidence of confusion, VIHFA points to FEMA's October 25, 2023, Motion to Clarify Defendant's Deadline to Respond to Petition, ECF No. 7.  This motion was filed *after* the service deadline, so in no way could it have affected VIHFA's service efforts.  But VIHFA argues it is illustrative all the same.  This is because FEMA's motion notes that "it is unclear whether Plaintiff's 'Petition and Motion' constitute a 'complaint' within the meaning of the Federal Rules of Civil Procedure."  Mot. to Clarify at 2.  If the Petition were properly considered a "complaint" under Rules 4 and 12, then FEMA would have to respond within 60 days of the date the summons was delivered.  *See* Rule 12(a)(2).  But if the Petition were properly considered a motion governed by Rule 5, FEMA would only have 14 days to respond.  The Court granted FEMA's request for an extension in a minute order.  In doing so, the Court never suggested that it considered VIHFA's Petition to be a "complaint" governed by Rules 4 and 12 rather than a "motion" governed by Rule 5.

All told, this request for clarification or, in the alternative, an extension, is hardly evidence of an "extraordinary circumstance" that prevented VIHFA from timely serving its Petition.  While FEMA also appears to have been confused about the law, this does not change the fact that VIHFA's decision to comply with Rule 4 and seek a summons was a "tactical mistake" that resulted from its own "misunderstanding."  *Menominee Indian Tribe*, 577 U.S. at

255. A cursory review of relevant law would have revealed that compliance with Rule 4 is not required for a motion to vacate an arbitration award. *See Hall St. Assocs., L.L.C.*, 552 U.S. at 582 (explaining that an application for a court to vacate an arbitration award "will get streamlined treatment as a motion"); *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 312 (3d Cir. 2021) ("[A]pplications to vacate an arbitration award under FAA Section 10 are also to be made as motions.").

Nor did VIHFA have reason to think its Petition was a "complaint" under Rule 4. The FAA provides that applications for relief from an arbitration award are "to be made and heard as motions rather than the filing of a complaint." *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 254–55 (3d Cir. 2020). Since VIHFA was not required to file a complaint to initiate this action, any language in the Standing Order regarding Rule 4 and the proper service of "the complaint" was inapplicable. The Standing Order's instructions cannot be reasonably construed as superseding the otherwise clear directive of the FAA for parties to follow the rules for "service of notice of motion"—*i.e.*, Rule 5.

Even if there were some ambiguity as to whether Rule 4 or 5 applies, VIHFA cannot point to any circumstance "beyond its control" that impeded service. Indeed, at every step of the process, VIHFA could have acted differently to ensure timely service. To start, the Board rejected VIHFA's motion to reconsider more than a month before the September 28 deadline, giving VIHFA plenty of time to properly serve FEMA under either Rule 4 or 5. Denial of Mot. to Vacate. And even assuming some unmentioned impediment prevented it from acting sooner than September 26, VIHFA could have attempted service under both Rule 4 and 5 by mailing a copy of the Petition without a summons and simultaneously seeking a summons from the Clerk. There is no harm in duplicative service. And in the face of legal uncertainty, it is wise to adopt a

14

belt-and-suspenders approach. Thus, the Court will not credit VIHFA's claims that "confusion" and "ambiguity" led it astray when poor judgment and a lack of resourcefulness prevented it from taking the correct path. *Cf. Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (tolling not warranted based on party's "miscalculation" or "inadequate research"); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (no tolling when "missed deadline was the result of an innocent misreading of the statutory provision").

To warrant equitable tolling, VIHFA must also show that it acted "diligently" to pursue its rights. *Menominee Indian Tribe*, 577 U.S. at 256. VIHFA fails to make this showing for several reasons just described. To start, it waited six weeks before moving to reconsider before the Board—a motion that was clearly not proper. Reply at 21*; see Young v. SEC*, 956 F.3d 650, 656 (D.C. Cir. 2020) ("[F]iling an action in a state court or federal agency that clearly lacks jurisdiction over the action does not toll the time for filing in federal court.") The Board denied that motion in mid-August, well over a month before the service deadline. Denial of Mot. to Vacate. But inexplicably, VIHFA waited for several more weeks, filing its Petition in this Court *one day* before service was due. Ex. 5, Notice of Electronic Filing, ECF No. 10-6; *see Dyson v. District of Columbia*, 710 F.3d 415, 422 (D.C. Cir. 2013) (finding plaintiff did not exercise diligence "when her own delay in filing . . . caused a substantial portion of the overall delay"). Last, despite recognizing potential ambiguity as to whether it needed to serve FEMA under Rule 4 or 5, VIHFA did not seek clarification from the Court or attempt service under both rules. This series of events does not reflect the level of diligence that courts expect of attorneys, even when they face circumstances beyond their control. VIHFA's lack of diligence thus provides an independent reason to reject its request for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408,

418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing [both] elements.").

**B.**

Due to its failure to effect timely service, VIHFA cannot seek judicial review of the arbitration award under the FAA. But VIHFA argues that the APA provides an alternative avenue to judicial review—one with a far more expansive statute of limitations. *See Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014) (explaining that APA claims are subject to a six-year statute of limitations under 28 U.S.C. § 2401). The APA presents its own obstacles, though. It provides judicial review of final agency action only when "there is no other adequate remedy" in federal court. 5 U.S.C. § 704. Since § 10 of the FAA provides an adequate remedy for VIHFA's procedural challenge to the arbitration award, the Court finds no basis for APA review.

The APA establishes "a broad spectrum of judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). But § 704 of the APA "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Id*. Where Congress has created a special statutory review procedure, "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 186 (D.C. Cir. 2017) (cleaned up). So "[a]n alternative remedy is adequate and therefore preclusive of APA review if there is clear and convincing evidence of legislative intent to create a special, alternative remedy." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 131 (D.C. Cir. 2017) (cleaned up).

The FAA contains an adequate alternative remedy, barring APA review. Section 10 provides that a court may vacate an arbitration award when a party to the arbitration claims the

16

award was procured by "corruption," where there was "evident partiality or corruption in the arbitrators," where the arbitrators "were guilty of misconduct," and "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a). These grounds for vacatur parallel the scope of review provided by § 706 of the APA. *See* 5 U.S.C. § 706(2). Because § 704 requires only an adequate alternative, the relief provided under the FAA need not be "identical . . . in order to have preclusive effect." *Citizens for Resp. & Ethics in Washington (CREW) v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017). And in any case, VIHFA has provided no reason that APA review would not be essentially duplicative of the review already provided. Indeed, the relief VIHFA seeks under the APA is identical to the relief it seeks under the FAA. So it cannot show that APA review is warranted. This conclusion is consistent with the Board's own regulations, which state that "arbitration awards are judicially reviewable only to the limited extent provided by the Federal Arbitration Act (9 U.S.C. 10)." 48 C.F.R. § 6106.613.

VIHFA argues that the Supreme Court's decision in *Bowen* narrowly construes the "adequate alternative remedy" requirement to apply only when Congress has provided judicial review procedures for a specific agency. *See* Pet.'s Reply to Mot. for Leave to Amend at 7, ECF No. 13. This is because *Bowen* concluded that "[Congress] did not intend [the APA's] general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." 487 U.S. at 903. But the D.C. Circuit has not limited *Bowen*'s holding to circumstances where Congress has established procedures for "specific agencies," such as the Federal Trade Commission or National Labor Relations Board. *CREW*, 846 F.3d at 1246. To the contrary, non-agency-specific remedies like FOIA can still be "adequate" for APA purposes so long as there is no "yawning gap between the relief" afforded. *Id.*; *see also Astakhov v. USCIS*, No. 23-cv-1502 (JEB), 2023 WL 6479080, at *7 (D.D.C. Oct. 5, 2023) (holding that

plaintiff's ability to bring Tucker Act suit in Court of Federal Claims provides adequate alternate remedy to APA action).[2]

Because the FAA provides an adequate alternative remedy—a remedy VIHFA seeks in this very case—the Court concludes that APA review is precluded under § 704.

### IV.

"Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with." *Rock Island A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920). Petitioner failed to timely serve Respondent under 9 U.S.C. § 12. And Petitioner cannot challenge the Board's arbitration award under the APA. For these reasons, the Court will deny Petitioner's Petition and Motion to Vacate Arbitration Award. A separate Order will issue.

Dated: March 29, 2024                                              TREVOR N. McFADDEN, U.S.D.J.

---

[2] The Court concludes that VIHFA has no cause of action under the APA. So it does not address FEMA's Article III standing argument. *See* Opp'n at 18. For the same reason, the Court will deny VIHFA's Motion for Leave to Amend, which VIHFA contends would remedy any deficiencies in standing. *See* Pet.'s Mot. for Leave to Amend, ECF No. 11.